DENNIS D. GOODWIN, APPELLANT, V. EPSEN LITHOGRAPHING
COMPANY ET AL., APPELLEES.

160 N. W. 2d 183

Filed June 21, 1968. No. 36731.

White, Lipp, Simon & Powers and Steven R. Bloch, for appellant.

Cassem, Tierney, Adams & Henatsch, L. J. Tierney, and Theodore J. Stouffer, for appellees.

Heard before, WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action by Dennis D. Goodwin against Epsen Lithographing Company for personal injuries resulting when Goodwin's hand was caught in a press.

Defendant Epsen Lithographing Company is in the business of manufacturing labels and cartons. Its plant occupies about one-half of a city block at Twentieth and California Streets in Omaha, Nebraska. The production area of Epsen is one large open room. Because of the confidential nature of the material produced, it is a "closed plant," restricted to "employees only." Wesley Ehresman is both a part-time employee of Epsen

and the self-employed operator of a die making and cutting business. He has operated under the name of Diamond Die Company since 1960. Ehresman's place of business is in a certain area within the boundaries of the Epsen production area. The area was estimated as 1,000 to 1,500 square feet. It was a definite area but was not marked nor partitioned off from the production area of Epsen's own lithographing operation. Ehresman and Epsen had executed a written agreement on February 2, 1960, which was still in effect at the time of the accident. It provided:

"1. Wes Ehresman will take care of all Epsen die work when and as we need it, as a part time employee at $5.00 Hr. charge. All materials furnished by Epsen.

"2. Wes Ehresman may use our equipment for personal use as listed below:

"(A) May install private telephone in Die Department for his personal use.

"(B) Has full personal use of equipment to be charged for on a rental basis of 5% of his (Wes) billing. There will be no rental paid on jobs done for Epsen. He may also use our material for his personal use and pay these on a cost basis.

"(C) Wes Ehresman will forward a check to Epsen on the 1st & 15th of each month to cover the above, rental, 5% of his billing and to cover material used."

Ehresman hired his own employees and introduced them to the personnel of Epsen in order to obtain clearance for their coming into the area. In the area assigned to Ehresman, some of the machinery and equipment was owned by Ehresman and some was owned by Epsen. No Epsen employee ever used the equipment owned by Ehresman, but they would occasionally use some of the Epsen equipment in his area and Epsen employees occasionally went through a passageway in the area with forklift equipment of Epsen.

In 1962, Ehresman purchased a used National Machine Company die cutting press. It had been designed, and

originally used, for both printing and die cutting. He moved it into his area of the plant in February 1964. The press weighed 2,000 to 3,000 pounds. The immobile bed of the press is vertical and to the center or rear of the machine. The platen moves from an almost horizontal position at the front of the machine up and back against the bed of the press. The operator stands in front of the machine and places a single piece of cardboard on the platen in guides fastened to the platen. When the platen returns from the bed of the press, the operator removes the cut sheet with one hand and replaces it with another sheet of cardboard with the other hand. The press has a capacity of approximately 15 or 16 cycles per minute. It is powered by an electric motor with a belt drive to a large flywheel.

Ehresman had installed a foot brake on the flywheel when he moved it into his area of the plant. The machine had a bar underneath the platen which could be pulled to prevent the press making a complete impression. It would not prevent the press from closing entirely, but kept it approximately 1/16 inch from the bed of the press. Except for this bar, the machine had no guards on it at the time Ehresman purchased it and the manufacturer had provided no place for putting on any guards involving the closing of the press. The patents on the machine were from the late 1800's although the year of manufacture is not shown. There was testimony, however, that many presses manufactured in recent years are constructed in the same way with no automatic turn-off devices.

Some 9 or 10 days before September 28, 1964, Ehresman had hired Goodwin. On that date, Goodwin was operating the press for Ehresman on the business of Ehresman which had no connection with Epsen. While operating the press, Goodwin's right hand was caught and crushed and later amputated.

Ehresman and his compensation insurance carrier, Transamerica Insurance Company, had paid workmen's

compensation benefits to Goodwin, and they were named as defendants in this suit against Epsen because of their subrogation interest. See § 48-118, R. S. Supp., 1967. At the conclusion of Goodwin's evidence, the motion of Epsen to dismiss Goodwin's petition was sustained, and he has appealed.

Goodwin's charges of negligence against Epsen are based on an alleged violation of the Nebraska Factory Act, Chapter 48, article 4, R. R. S. 1943, and that Epsen was negligent in permitting Goodwin to operate the press when it knew he was inexperienced, and in failing to warn him of the dangerous character of the press.

Goodwin takes two alternative positions. The first is that he was an employee of Epsen because he was hired by Ehresman who was a part-time employee of Epsen, and that Epsen was the operator of the plant where the press was being used. The evidence is uncontradicted that Goodwin was an employee of Ehresman and not Epsen. Even if Goodwin's position were supported by the evidence, and even if a violation of the Nebraska Factory Act were proved, he would still not have a common law action for negligence against the employer. Where a plaintiff employee comes within the provisions of the Workmen's Compensation Law, its remedies are exclusive of his right to bring an action for damages against his employer based upon the provisions of the Nebraska Factory Act. See Navracel v. Cudahy Packing Co., 109 Neb. 506, 191 N. W. 659.

Goodwin's alternative argument is that he was an invitee of Epsen, rather than an employee, and that a violation of the Nebraska Factory Act constitutes negligence as to an invitee giving rise to an action for damages based on negligence. The only negligence as to an invitee chargeable to Epsen is based on an alleged violation of the Nebraska Factory Act, Chapter 48, article 4, and, in particular, section 48-409, R. R. S. 1943. The Nebraska Factory Act applies to "occupants" and "operators" of "plants" and, under the facts here, it would be

difficult to find that Epsen rather than Ehresman was subject to the act as to the particular machines or "plant" involved. See Quist v. Duda, 159 Neb. 393, 67 N. W. 2d 481. Even if it be assumed that Epsen was "operating" the "plant" where this press was used, the evidence fails to establish a violation of the act. Section 48-409, R. R. S. 1943, requires guards to protect against injury from certain specified things which do not include press equipment. Roll guards are required on roll feed machines fed by hand, but this press is not a roll feed machine. Evidence that a printing or die cutting press is old and is hand-fed rather than automatic is not evidence of improper design and does not, in and of itself, establish a violation of the Nebraska Factory Act.

The evidence is also undisputed that the Department of Labor, which is given responsibility for inspection and enforcement of the Nebraska Factory Act, had inspected this machine and had stated that it was like any other printing press and they did not know what could be put on it for protection or guards. The machine was still in use and the only conclusion to be drawn from the evidence is that the particular machine had been inspected and approved. Evidence that the Department of Labor has inspected and approved a particular machine is prima facie evidence that its use is not in violation of the Nebraska Factory Act.

The judgment of the district court was correct and is affirmed.

AFFIRMED.